UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

GURPREET SINGH,

    Petitioner,

v.

                             No. 6:26-CV-183-H

TODD M. LYONS, et al.,

    Respondents.

## ORDER

The Fifth Circuit held recently that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *see* 8 U.S.C. § 1225(b)(2)(A). Gurpreet Singh, a native and citizen of India, is one such alien, having illegally entered the United States three years ago. His habeas petition, filed after the Fifth Circuit's decision in *Buenrostro-Mendez*, demands his release based on the text of the INA, the Fifth Amendment's Due Process Clause, and the Administrative Procedure Act. Dkt. No. 1.

In light of *Buenrostro-Mendez*, Singh's claim based on the INA is foreclosed. His due process claim also fails: Neither the substantive nor procedural veins of due process require that alien petitioners be afforded a bond hearing before they are re-detained . Due process is a contextual concept, and in the context of alien removal, it is a limited one. Congress determined that aliens like Singh are not entitled to bond, but they are permitted to remain in U.S. custody and fight to remain here. That is more than sufficient process so far as the Due Process Clause is concerned. And the APA does not require Singh's release, either. Therefore, the petition (Dkt. No. 1) is denied.

## 1.    Background

In 2022, Singh illegally entered the United States at or near San Luis, Arizona. Dkt. No. 9 at 4. He was apprehended but ultimately released into the country on his own recognizance because of a lack of detention capacity.[1] *Id.* at 15. Years later, in December 2025, immigration officials re-detained Singh without bond after encountering him at a commercial truck checkpoint. *Id.* at 8; Dkt. No. 1 ¶ 3. He has a Notice to Appear charging him with removability as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Dkt. No. 9 at 4; *see* 8 U.S.C. § 1182(a)(6)(A)(i).

In January, Singh's counsel withdrew a request for a bond hearing. Dkt. No. 9 at 10. It makes sense why: Immigration judges are bound by the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado* to deny such requests for lack of jurisdiction. 29 I. & N. Dec. 216 (BIA 2025). That is because *Yajure Hurtado* holds that aliens present in the United States without admission must be detained without bond under Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings. *Id.* at 220.

Because no immigration judge will grant bond, Singh seeks a writ of habeas corpus. Dkt. No. 1. The petition states three claims for relief. First, Singh alleges that his detention without bond violates the INA. *Id.* ¶¶ 91–99. He argues that Section 1225(b)(2)(A) does not apply to aliens who, like him, previously entered the United States illegally and have been living in the country prior to being apprehended and placed in removal proceedings. *See id.* ¶ 92. In his view, the proper statutory authority for his detention is Section 1226(a), which

---

[1] Singh's release on recognizance was not a form of admission. *See Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418, at *3, *6–8 (N.D. Tex. Jan. 15, 2026).

permits immigration judges to release aliens on bond while their removal is pending. *See id.* Besides his statutory claim, Singh also contends that his detention without bond violates his substantive and procedural due process rights. *Id.* ¶¶ 60–72. Lastly, Singh alleges that re-detaining him without a bond hearing violates the APA. *Id.* ¶¶ 73–90.

Before Singh filed his petition, the Fifth Circuit issued its decision in *Buenrostro-Mendez*, which agreed with *Yajure Hurtado* and upheld the government's mandatory-detention policy under Section 1225. *See* 166 F.4th at 498. The Court turned to the plain language of Section 1225, which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). The Court found "no material disjunction" between the phrases "applicant for admission" and "seeking admission," and thus concluded that all applicants for admission fall within Section 1225(b)(2)(A)'s grasp. *Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Garibay-Robledo v. Noem*, 814 F. Supp. 3d 747, 754 (N.D. Tex. 2026)).

### 2.    Legal Standard

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or

treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### 3.    Analysis

As noted above, Singh raises thee claims in his habeas petition—one involving Sections 1225 and 1226 of the INA, another based on the Fifth Amendment's Due Process Clause, and another based on the APA. Dkt. No. 1 ¶¶ 60–99. *Buenrostro-Mendez* forecloses Singh's statutory claim. Thus, the only claims left for consideration are the due process claim and APA claims. The Court has repeatedly rejected identical arguments.[2] Still, the Court considers the arguments raised in Singh's petition to address whether re-detention without a bond hearing violates the Constitution or the APA. The answer is no.

### A.    *Buenrostro-Mendez* forecloses Singh's INA claim.

Singh is an "applicant for admission" under the INA's mandatory detention provision. Section 1225 broadly defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Singh is an "alien." He is "present in the United States." And he "has not been admitted" because he did not "lawful[ly] ent[er] [the country] after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A) (defining "admission" and "admitted"). As an applicant for admission, binding Fifth Circuit precedent requires that he

---

[2] *See, e.g.*, *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez*, 2026 WL 114418; *Garibay-Robledo*, 814 F. Supp. 3d 747; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Zuniga v. Lyons*, 814 F. Supp. 3d 685 (N.D. Tex. 2025).

be detained without bond under Section 1225(b)(2)(A). *See Buenrostro-Mendez*, 166 F.4th at 498. Thus, Singh's INA claim fails.[3]

### B.    The Due Process Clause does not require the government to give Singh a bond hearing.

Next is Singh's claim that the government's refusal to provide a bond hearing before re-detaining him violates the Fifth Amendment's Due Process Clause. Dkt. No. 1 ¶¶ 60–72. Because *Buenrostro-Mendez* did not directly address this question, the Court turns to Singh's arguments. He asserts that his detention without bond violates both his substantive and procedural due process rights. But on either approach, Singh is not entitled to relief.

Start with substantive due process. That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). While still recognizing due-process rights for aliens present in the United States, *see, e.g., Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures. The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911–12. To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention. In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings. In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth

---

[3] Even if this Court were not bound by *Buenrostro-Mendez*, it would have reached the same result for the reasons discussed in its numerous prior decisions on this issue. *Supra*, n.2.

Amendment entitles aliens to due process of law in deportation proceedings." 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process." *Id.* Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528. It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526. Against that backdrop, the notion that substantive due process requires a bond hearing is untenable.

Singh's procedural due process claim fares no better. He seeks relief relying on the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See* Dkt. No. 1 ¶¶ 68–72. The *Mathews* test, while common, is not the only tool for resolving procedural due process challenges. The Supreme Court said as much: "[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). In fact, the "Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

The application of *Mathews* to Section 1226 cases is "unwarranted on the test's own terms." *Ladak v. Noem*, 814 F. Supp. 3d 712, 725 (N.D. Tex. 2025). The Supreme Court applied *Mathews* in *Landon v. Plasencia*, emphasizing that its balancing test was appropriate for "long-time lawful permanent resident[s]" in contrast to "detentions of aliens at the border or returning lawful permanent residents who had spent time abroad." *Id.* (citing 459 U.S. 21, 32–34 (1982)). Aliens in the former category have "gain[ed] admission to our

country and [have begun] to develop the ties that go with permanent residence," meriting a level of due process more analogous to that of a citizen. *Landon*, 459 U.S. at 32. In the latter category, aliens "request[] a privilege and [have] no constitutional rights." *Id.*; *DHS v. Thuraissigiam*, 591 U.S. 103, 138–39 (2020) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." (quotation omitted)). Critically, aliens who are released into the country pending removal are "treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139.

As an "applicant for admission," Singh has "only those rights regarding admission that Congress has provided by statute." *Id.* at 140; *Landon*, 459 U.S. at 32 ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."). With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission. "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). No part of the statute "says anything whatsoever about bond hearings." *Id.* Accordingly, Singh is not entitled to a bond hearing as a matter of procedural due process.

### C.   The APA precludes judicial review of Singh's claim.

Singh argues that his re-detention without a hearing was contrary to law and arbitrary and capricious in violation of the APA. Dkt. No. 1 ¶¶ 73–90. Section 704 of the APA states, in no uncertain terms, that "[a]gency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court* are subject to judicial review." 5 U.S.C. § 704 (emphasis added). Because Singh requests habeas relief as the

remedy for his APA claim, he unwittingly admits that there is, in fact, an adequate remedy outside of the APA. Moreover, the Supreme Court recently held that "where an alien detainee's claims 'necessarily imply the invalidity of their confinement' these claims must be brought in habeas." *P.B. v. Bergami*, No. 3:25-CV-2978, 2025 WL 3632752, at *9 (N.D. Tex. Dec. 13, 2025) (O'Connor, C.J.) (quoting *J.G.G.*, 604 U.S. at 672). The APA thus does not provide for judicial review of his claim.

### 4. Conclusion

In short, Singh, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A). *Buenrostro-Mendez*, 166 F.4th at 498. And neither the Due Process Clause nor the APA require a bond hearing or any other kind of pre-deprivation hearing in these circumstances. Thus, the petition (Dkt. No. 1) is denied.

So ordered on June 24, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

– 8 –